SOUTHERN DISTRICT OF FLORIDA

THE ASSOCIATION FOR DISABLED
AMERICANS INC., AND ALAN RIGERMAN
        Plaintiff,

vs.

TOWN OF MIAMI LAKES

        Defendant.
_____/

## COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF

Plaintiffs The ASSOCIATION FOR DISABLED AMERICANS, and ALAN RIGERMAN (hereinafter Jointly referred to as "Plaintiffs"), hereby sue Defendant, the TOWN OF MIAMI LAKES FLORIDA (hereinafter "Defendant" for injunctive relief pursuant to 42 U.S.C. §12131, *et seq.* (Title II), (hereinafter, the "Americans With Disabilities Act" or "ADA").

## JURISDICTION

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§1331 and 1343 for Plaintiffs' claims arising under 42 U.S.C. §§12131, *et seq.*, based on Defendant's violations of Title II of the Americans With Disabilities Act (*see also* 28 U.S.C. §§2201 and 2202).

## PARTIES

2. Plaintiff, the Association for Disabled Americans, Inc. ("Association") is a non-profit corporation organized and existing under the laws of the State of Florida.

3. The Association's members are qualified individuals with disabilities under and as defined by the ADA.

4. The primary purpose of the Association is to represent their members to assure that public services, programs, facilities, activities and spaces, and premises, are available and accessible to and useable by their members, to assure their members that they will not be excluded from participation in or be denied the benefits of public services, programs, facilities, activities or accommodations, to assure their members that they will not discriminated against because of their disabilities, and to bring appropriate action when ADA and violations exist.

5. The Association and their members have suffered, and without the immediate relief requested herein will continue to suffer, direct and indirect discrimination, injury and damage as a result of the defendant's actions or inaction described herein.

6. The Association has also been discriminated against because of their association with their members and their claims.

7. Plaintiff, Alan Rigerman (hereinafter Plaintiff") is a resident of the State of Florida, is *sui juris*, is a qualified individual with a disability under and as defined by the ADA, and desires to have access to and participate in the services, programs, facilities, activities, buildings, spaces, premises and accommodations provided by Defendant, but is unable to do so solely as a result of his disability and Defendant's discriminatory practices described herein.

8. Plaintiff visited and resides Miami Lakes in 2010 and in previous years.

9. Plaintiff will continue to visit the Town of Miami Lakes once the violations herein have been remedied.

10. The individual Plaintiff has suffered, and without the immediate relief requested herein will continue to suffer, direct and indirect discrimination, injury and damage as a result of the Defendant's actions or inaction described herein.

11. The defendant, the Town of Miami Lakes is a public entity as defined by and pursuant to 42 U.S.C. §12131, and is subject to the provisions of the ADA.

## VIOLATION OF AMERICANS WITH DISABILITIES ACT

### INTRODUCTION

12. The individual Plaintiff, as well as the corporate Plaintiff Organization and it's members brings this claim against the Defendant based upon the Americans With Disabilities Act, which was enacted by Congress on July 26, 1990.

13. In enacting the ADA, Congress found, among other things, that:

  i. some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

  ii. historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

  iii. discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

  iv. individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs, or other opportunities; and

  v. the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity,

42 U.S.C. §12101(a)(1)-(3), (5) and (9).

14. Congress explicitly stated that the purpose of the ADA was to:

    i. provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

    ii. provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and,

    iii. invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

15. The Defendant has violated the ADA and has discriminated against the individual plaintiff and the members of the corporate plaintiff organization by excluding them from participation in and denying them the benefits of defendant's public services, programs, facilities, activities and accommodations solely by reason of his/ her disability.

## COUNT I
## DENIAL OF PUBLIC SERVICES, PROGRAMS, FACILITIES ACTIVITIES AND ACCOMMODATIONS
## (THE AMERICANS WITH DISABILITIES ACT)

16. The Defendant is in violation of the ADA and has discriminated against the individual Plaintiff and the corporate plaintiff by:

A. The Town's web site has no listing of an ADA coordinator pursuant to 35.107(a) to designate a responsible employee to coordinate its efforts to comply with and carry out the Town's ADA responsibilities, 28 C.F.R. § 35.107(a).

B. The Town's web site does not conform to the 508 standards, §1194.21(a) through (l), the requirements for accessibility under W3C sites to enable navigation with the screen readers.

C. The Town's web site has no listing of any required grievance procedure for resolving complaints of violations of title II, 28 C.F.R. § 35.107(b).

D. The Town's web site has no results from its own web site search engine for "ADA, disabled, grievance, access, or handicapped".

E. The existence of a comprehensive transition plan for all Town facilities cannot be established pursuant to § 35.150(d) and TAM II-8.0000 and II-8.3000.

F. No notice to the public can be located on the Town's web site or within Town Hall pursuant to TAM II-8.4000, or within Town publications or disseminated documents pursuant to 28 C.F.R. §35.106.

G. No self-assessment pursuant to §35.105 of its communications to ensure that communications with applicants, participants, and members of the public with disabilities are as effective as communications with others, including furnishing auxiliary aids and services when necessary, 28 C.F.R. §35.160 has been conducted to date.   This is evidenced by the lack of any listing of the TDD telephone number on its web site or disseminated documents.

H. The lack of any listing of a TDD telephone number on its web site is also discriminatory by § 35.161, where telecommunication devices for the deaf (TDD's) are required, where a public entity communicates by telephone with applicants and beneficiaries.   TDD's or equally effective telecommunication systems are required to communicate with individuals with impaired hearing or speech.

I. The Town does not provide on its web site, direct access via TTY (text telephone) or computer-to-telephone emergency services, including 9-1-1 services, for persons who use TTYs and computer modems, 28 C.F.R. § 35.162.

J. No information is on the town's web site for interested persons with disabilities concerning the existence and location of the Town's accessible services, activities, and facilities required by 28 C.F.R. §35.163(a) can be found on Town's publications.

K. The Town is exhibiting employment discrimination precluded by §35.140(a) where no qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity, as job application forms do not provide for reasonable accommodations. (**See Exhibit 1, Job Application**)

L. The Town has not demonstrated on its web site, its findings or ability to conduct a self-evaluation of its services, policies, and practices by July 26, 1992, and made modifications necessary to comply with the Department's title II regulation, 28 C.F.R. § 35.105.

M. The Town has not demonstrated on its web site or on any documents, its ability to notify applicants, participants, beneficiaries, and other interested persons of their rights and the Town's obligations under title II and the Department's regulation, 28 C.F.R. § 35.106.

O. The Town has not demonstrated on its web site or in any documentation, that it has designated a responsible employee to coordinate its efforts to comply with and carry out the Town's ADA responsibilities, 28 C.F.R. § 35.107(a).

P. The Town has not documented or disseminated a grievance procedure for resolving complaints of violations of title II, 28 C.F.R. § 35.107(b).

Q. The Town has not demonstrated its ability on its web site or within an existing parks, it operates each program, service, or activity so that, when viewed in its entirety, it is readily accessible to and usable by individuals with disabilities, 28 C.F.R. §§ 35.149 - 35.150, by:
   (a) delivery of services, programs, or activities in alternate ways, including, for example, redesign of equipment, reassignment of services, assignment of aides, home visits, or other methods of compliance or, if these methods are not effective in making the programs accessible,
   (b) physical changes to buildings (required to have been made by January 26, 1995), in accordance with the Department's title II regulation, 28 C.F.R. §§ 35.150 and 35.151, and the ADA Standards for Accessible Design (Standards), 28 C.F.R. pt. 36, App. A, or the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. § 101-19.6, App. A.

R. The Town does provide facilities constructed or alteration begun after January 26, 1992, that are readily accessible to and usable by people with disabilities, in accordance with 1) the Department's title II regulation and 2) the Standards or UFAS, 28 C.F.R. § 35.151.

S. The Town does not provide information for interested persons with disabilities concerning the existence and location of the Town's accessible services, activities, and facilities, 28 C.F.R. § 35.163(a).

T. The Town does not provide signage at all inaccessible entrances to each of its facilities, directing users to an accessible entrance or to information about accessible facilities, 28 C.F.R. § 35.163(b).

U. The second of mentions of ADA that could be located within the entirety of the Town web site is within the <u>Town of Miami Lakes, Adopted Comprehensive Plan, December 19, 2003, Policy 1.2.12</u>**:** which "Require(s) the effective implementation of all applicable site and building design requirements of the Americans with Disabilities Act (ADA) within the Town".  The second location as previously mentioned in the preamble of the enumerated allegations, was within a narrative regarding the Town paying one-half (1/2) of the rent for the Main Street Playhouse.

V. Tot lots throughout the town do not provide for an accessible route to the amenities pursuant to ADAAG 4.3.2(1) & 4.5.11. (Picture 1).

---

1 Measurements and documentation used to determine the degree of non-compliance were with a tape measure, anthropomorphic measurements, door pressure gauge, watch, slope meter, digital recorder, and digital camera.   Compensation rate, testimony, and qualifications are reflected in Curriculum Vitae attached as Exhibit 1.   Prior involvement in similar or nearly identical cases through private or independent engagement, plaintiff and defense consultation, work with and for building contractors, architects, architectural continuing education units, property owners, research, study, training, and continuing

W. The access aisle for the disabled parking within Skate Park does not provide for the minimum 5-foot pursuant to 36.211, ADAAG 4.6.2. (Picture 18)

X. No accessible route is present from public transportation stops connecting accessible building or facility entrances with all accessible spaces and elements within the building or facility pursuant to ADAAG 4.1.3 & 4.3.2.   The only route is through the vehicular entrance. (Pictures 20 & 21)

Y. No accessible route or path of access with a compliant surface is present to the picnic table, swing sets, playground equipment or elements thereof pursuant to 36 CFR part 1191 precluded by ADAAG 4.3. (Pictures 16, 17, and 22 -24)

Z. The door to the office lacks accessible door hardware precluded by ADAAG 4.13.9. (Pictures 26 & 27)

AA. Signage for the office is improperly located on the door the rather than at 60" above the finish floor on the wall on the latch side of the door.   Further, the signage lacks Braille. Both are required by ADAAG 4.30. (Pictures 26 & 27)

BB. No compliant signage is present at the public restrooms as they are mounted on the door rather than the wall at 60" affixed and lack Braille pursuant to ADAAG 4.30. (Pictures 27, 28, 40 & 40A).

CC. The thresholds at the restrooms have a vertical change in level exceeding ½" precluded by ADAAG 4.3.8 & 4.13.8. (Picture 29)

---

education, were all used to determine identification and degree of non-compliance and proposed corrections.   All methodology and opinions are based upon a reasonable degree of scientific certainty. Compensation is based on an hourly rate of $210.00 per hour.   Hours involved are reflecting in billing records.   Cost factors are based on the R S Means Company Means "ADA" Compliance Pricing Guide.   R S Means Company Means ADA Compliance Pricing Guide.   R.S. Means is North America's leading supplier of construction cost information.   In determining costs, reference is made to the "Evaluation of Barrier Removal Costs associated with 2004 Americans with Disabilities Act (ADA) Accessibility Guidelines" by E.H. Pechan & Associates, Inc. for the SBA Office of Advocacy dated November 2007 and to RS Means ADA Compliance Pricing Guide 2nd Edition (2004).   As a member of the Construction Market Data Group, Means provides accurate and up-to-date cost information that helps owners developers, architects, engineers, contractors and others to carefully and precisely project and control the cost of both new building construction and renovation projects.   All cost estimate sums include bare material cost pus 20% (compensation for the contractor's risk in the purchase and handling of materials), plus the marked-up costs for labor and equipment as determined by R. S. Means Company.   (Labor is marked up by an average of 66.8% to cover labor burdens, such as Worker's Compensation and employee benefits, and subcontractor's overhead and profit.   Equipment is marked up 10% to cover the contractor's risk related to this item) This sum is then increased by 15% to cover general condition items such as permits, trash removal fees, and site supervision, 7.5% for the general contractor coordinating the subcontractors, and 15% for the general contractor's overhead and profit.   All estimates are adjusted to reflect specific locations from national average, annual increase in unit costs and annual inflation.   R.S. Means Company, Inc., Construction Plaza, 63 Smiths Lane, Kingston, MA 02364-0800, 1-800-334-3509.

    DD. The lavatories lack insulated pipes to protect from burns or sharp or protruding objects pursuant to ADAAG 4.19.5. (Picture 30)

    EE. The mirror is mounted above the maximum 40" height precluding seated individual from seeing himself or herself pursuant to ADAAG 4.18.6. (Pictures 30 & 31).

    FF. Within the men's restroom, the urinals are mounted above the requisite 17 inches pursuant to ADAAG 4.18.2. (Picture 32)

    GG. The coat hooks in the restrooms are beyond reach parameters pursuant to ADAAG 4.2.6. (Picture 34)

    HH. The toilet paper dispensers are not mounted at 19" and are not 36" from the back wall pursuant to ADAAG 4.16.6. (Pictures 39)

    II.  Parks have several picnic tables without any location for an individual who uses a wheelchair. Seats are fixed and an adequate depth of 19 inches is not present at the end pursuant to ADAAG 4.32. (Picture 41)

    JJ  The drinking fountain does not provide a level clear floor or ground space for an individual who uses a wheelchair pursuant to ADAAG 4.15.5 & 4.2.4. (Picture 42)

    KK. Parks have routes blocked by soil, grass, or sand precluding passage for an individual in a wheelchair or other mobility impairments pursuant to 36.211, ADAAG 4.3, 4.5.1 & 4.5.2.   (Pictures 43 - 51 & 53)

    LL. Newly constructed Miami Lakes Park has parking without any designated as disabled. (Picture 52)

    MM. Disabled parking signage at the <u>newly</u> constructed community Center is not mounted at 84" to the bottom of the sign pursuant to §553.5041(c)1(6), ADAAG 4.6.2. (Picture 56)

    NN. Signage at the unisex shower is mounted on the door rather than the wall pursuant to ADAAG 4.30.6. (Picture 57)

    OO. The baby-changing table within the restroom does not provide accessible hardware pursuant to ADAAG 4.27.4. (Picture 60)

    PP. The baby-changing table is mounted above 36" exceeding maximum height requirements of ADAAG 4.7.2. (Picture 60)

    QQ. The Community Center has several groupings of picnic tables with several picnic tables in each group without any location for an individual who uses a wheelchair. Seats are fixed and an adequate depth of 19 inches is not present at the end pursuant to ADAAG 4.32. (Pictures 61-63)

RR. Outdoor barbecue grills are present without an accessible route for an individual who uses a wheelchair, walker, cane, or crutches pursuant to ADAAG 4.3.1. (Picture 64)

SS. No clear floor space is present at the grill for an individual with mobility impairment pursuant to ADAAG 4.3.1 & 4.2.4. (Picture 64)

TT. Toilet paper dispensers within the restrooms at the Field House are improperly located as they are not the requisite 36" from the back wall pursuant to ADAAG 4.16.6 & Fig. 30d. (Picture 65)

UU. No clear floor space is present at the side of the commode as a trash receptacle is present pursuant to ADAAG 4.16.2. (Picture 66)

VV. Spaces present on the walkways have openings that exceeds ½" precluded by ADAAG 4.2.4.3 & 4.5.4 & Fig. 8(g). (Pictures 68 & 69)

WW. Signage at some rooms is not mounted at 60" affixed pursuant to ADAAG 4.30.6. (Pictures 70 & 71)

16. The above listing is not to be considered all-inclusive of the physical barriers, dangerous conditions or ADA violations encountered by Plaintiffs, and/or which exist within the Town of Miami Lakes. Plaintiffs require a full inspection in order to determine all of the discriminatory acts violating the ADA.

17. As set forth above, the individual Plaintiff as well as the corporate Plaintiff organization and it's members have been denied access to, and without the relief requested herein will continue to be denied, the benefits of the services, programs, facilities, activities, buildings, spaces, premises and accommodations offered by Defendant solely by reason of his disability, and have otherwise been discriminated against and damaged solely by reason of his/her disability as a result of Defendant's ADA violations set forth above.

18. Plaintiffs have been obligated to retain undersigned counsel for the filing and prosecution of this action. Counsel's fees, litigation expenses and costs are recoverable from Defendant pursuant to 42 U.S.C. §12205.

19.   Any and all requisite notice, if any, has been provided to the Defendant and all necessary administrative remedies, if any, have been exhausted.

20.   Pursuant to 42 U.S.C. §§12133, 29 U.S.C. §794a, and 49 U.S.C. §2000e, the Court is provided authority to grant Plaintiffs' injunctive relief including an order to alter the subject premises, facilities, services, activities, programs, buildings, spaces, premises and accommodations to make them accessible to and useable by individuals with disabilities to the extent required by the ADA, closing all premises and facilities, and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed.

**WHEREFORE,** Plaintiffs respectfully request the Court to issue a permanent injunction enjoining the Defendant from continuing its discriminatory practices, ordering the Defendant to alter and modify the subject premises, facilities, services, activities, programs, accommodations and buildings as appropriate to comply with the ADA, closing the subject premises, facilities and buildings and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed, and awarding Plaintiffs their attorneys' fees, costs and litigation expenses incurred in this action.

Respectfully submitted,

s/Robben M. Heethuis (Florida BarNo.75899)
Max.Heethuis@hotmail.com
Heethuis and Associates LCC
1888 NW 7th Street
Miami, FL 33125
Phone: (269)-370-4751
Attorney for Plaintiff Alan Rigerman and The Association For Disabled Americans, Inc.